STATE *EX REL.* SOUTHERN RAILWAY CO. v. TALLEY, ASSESSOR.

1. ASSESSMENT—RAILROADS.—The assessment of railroad property by State board of assessors, under Constitution of 1868, was only for taxation for State and county purposes.

2. IBID.—IBID.—COLUMBIA.—The city of Columbia was authorized by its charter, as amended in 1893 (21 Stat., 678,) to assess for city taxation in 1895, the property of a railroad company located within the city limits, without reference to its assessment by the State board of assessors. MR. CHIEF JUSTICE McIVER *dissents.*

Before GARY, J., Richland, May, 1896. Affirmed.

Petition by Southern Railway Company for mandamus against T. T. Talley, as city assessor and auditor of the city of Columbia, and J. Frost Walker, as city clerk and treasurer, requiring them to accept as the assessment of petitioner's property within the city limits the assessment placed on it by State board of assessors. Writ refused. Petitioner appeals.

*Messrs. B. L. Abney* and *Edgar M. Thompson*, for appellant, cite: *On first point:* Rev. Stat., 233, 234, 236; 113 U. S., 516. *On second point:* Rev. Stat., 569; 21 Stat., 678; 12 Stat., 293; 14 Stat., 569; 18 Stat., 91; 113 U. S., 516.

*Mr. Jno. P. Thomas*, contra, cites: *On first point:* Rev. Stat., 233, 242.

Sept. 13, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. The petitioner prayed for a writ of mandamus to be directed to the respondents, in their respective official capacities, by which each of them should be commanded to receive and accept, as the return of the petitioner for taxation, the assessment made by the State board of assessors of 3.25 miles of main line of the Charlotte, Columbia and Augusta Railroad Company, within the limits of the city of Columbia, at $13,000 per mile, and the same assessment of one mile, main line of the Columbia Railroad Company, within the city limits, at $10,000 per mile, aggregating $53,250—in lieu of the assessment of said property as made by the city assessment; 3.25 miles of Charlotte, Columbia and Augusta Railroad at $13,000 per mile; one mile of main line of Columbia and Greenville Railroad at $13,000 per mile, and twelve miles of side tracks within said city at $8,000 per mile—aggregating $157,250.

Judge Ernest Gary, as presiding Judge, denied the writ to petitioner, and an appeal was taken from said order on eight grounds. We do not deem it necessary to set out the proceedings with greater detail, nor the grounds of appeal in the terms thereof, as we hope to be able to pass upon the merits of each in our treatment of the contention. It may be remarked just here that no other questions are presented by this appeal than such as affect the right of the city of Columbia to assess property of the petitioner for taxation, independently of the assessment made by the State board of assessors. Our inquiries would naturally be directed: First. To the power and extent thereof of the State board of assessors. Second. What power of assessment for taxation of railroad property has been vested in the city of Columbia by the General Assembly?

We will now consider these propositions in their order. 1. The provisions of the Revised Statutes, in relation to taxation, so far as the assessment of property therefor is concerned, may be found under title III., chap. XIV., secs. 216 to 316 inclusive. An examination of those

sections shows conclusively that the assessment therein provided is confided generally to auditors of counties, and certain boards thereafter, with certain special exceptions, and that these special exceptions are railroads, express and telegraph companies, with provisions as to other corporations, and that the assessment of the class of subjects just enumerated, as special exceptions, is confided to the treasurer of the State, secretary of State, comptroller general, and attorney general, and the chairman of the board of railroad commissioners (see sec. 240), who collectively make up the State board of assessors. When a railroad is to be assessed by the State board of assessors, such board acts primarily upon the returns of the railroad itself, as to its property liable to assessment for taxation. This return includes the value, the total length of the railroad in each county, city, town, and incorporated village, the total length of any double track in this State, and the length thereof in each county, town, city, and incorporated village of this State; the total length of all side tracks, and the length thereof in each city, county, town, and incorporated village in this State; the location and value of all shops, depots, grounds, station houses, wood and water stations, buildings, stationary engines, tools, implements and fixtures in this State, and all other real estate necessary to the daily running operations of the road; the number and value, each, of all locomotive engines, passenger, freight, platform, gravel, construction, hand and other cars; the value of their moneys and credits; the total value of the entire road, appurtenances and equipments, and the total value of said road in this State, with its equipments and appurtenances (see sec. 234). In ascertaining the value of the road and property of any railroad company, the value of the right of way, bed and track of the whole road shall be fixed, and such value apportioned *pro rata* to each mile of the main track; and to the value of the number of miles of main track in each town, city, and incorporated village of each county in this State, through and into which said road is located, shall be added the value of the real estate, fix-

tures, stationary engines, tools, implements, machinery and other stationary property provided for use in the daily operations of the road situate in said town, city or village; and the total value of the rolling stock, moneys, and credits shall be apportioned *pro rata* to each mile of the main track of said road, and the amount thereof, according to the number of miles of main track in each town, city, and village in this State, added to the value of the main track in such town, city, and village, respectively; and the aggregate value of said road and property in this State, and in each county, city, town, and incorporated village in this State, through or into which said road is located, shall be stated in said return (sec. 236).

Now it is apparent from these sections that everything of value belonging to a railroad is included in ascertaining its value, and that this value is apportioned to each mile of the main track of the railroad. Hence when a mile of the main track is taxed, such tax includes the value not only of the mile of main track, but also all other taxable property of such road, according to the plan adopted in sec. 236. This plan of assessment is fair and just. But we are bound to admit that from a scrutiny of sections we have mentioned— 216 to 316—it appears that the assessment here provided has reference only to that for the levy of State and county taxes; or, to be more exact, the taxes to be collected by the treasurers of the respective counties of the State. There is nothing herein contained which makes the assessment herein provided for applicable to cities, towns or villages authorized by law to assess property within said cities, towns or villages for local taxation. It is true, in *State ex rel. Ross* v. *Kelly*, 45 S. C., 457, this Court held that the city auditor of the city of Charleston was compelled to make the assessment of taxable property in that city from the assessment of such property for taxation as made by the auditor of Charleston County for State and county taxes, but that result was reached, and so announced in the opinion prepared by Mr. Justice Gary, because, although the

State Constitution had empowered the General Assembly to vest the power to assess and collect taxes in cities, towns, and other municipal corporations, no such power has been conferred, either by a general or a special act, upon said city of Charleston. We shall see later on that the General Assembly has clothed the city of Columbia with the power to levy and assess property for taxation and collect taxes. This is somewhat of a digression; we meant to confine ourselves to stating how this State board of assessors proceeded in their duties, and the extensive limits fixed by law for the assessment of the property of railroads for taxation, and that this assessment, as therein provided, did not relate to taxes to be assessed and collected for cities, towns, and villages for the purposes of such municipal corporations, but to taxation for State and county purposes.

We will next consider the power of the city of Columbia to assess property within the corporate limits of said city for taxation for the purposes of such municipal corporation.

2　It is well always to bear in mind, when considering the power of a municipal corporation to levy and collect taxes, that no such power is inherent in such corporation. The General Assembly of this State is alone invested, under the Constitution of 1868, with the power to levy and collect taxes, but that Constitution authorized the General Assembly to delegate this taxing power to a city, town, village, &c. The act of 1893 (21 Stat. at Large, 678,) amongst other things, provides: "That any and all person or persons, or corporations, owning or having charge as agent, trustee, executor or administrator of property, either real or personal, or both, liable for taxation by and within the city of Columbia, shall make discovery and return of said property on or before the 15th day of September of each year, upon oath or affirmation to the clerk and treasurer of said city, and shall make payment of all taxes levied and assessed upon the said property to the clerk and treasurer of said city of Columbia, *according to his assessed value thereof, &c.*" There is no claim by the appellant that the language

of the act of 1893 needs any construction to ascertain its
meaning, but he insists that sec. 236 of the Revised Statutes
of this State must be held to subordinate the assessment by
the city for its purposes to that assessment of railroad pro-
perty provided in the section (236) for State and county
taxes.    We agree with the Circuit Judge where he says:
"In my opinion, the city authorities of the city of Columbia,
under the said act (1893), and under other provisions of its
charter, had a right during the year 1895 to make an assess-
ment upon the property of the petitioner's company at a
valuation fixed by the city clerk and treasurer of the city
of Columbia, although such valuation was higher than the
valuation as fixed and determined by the State board of as-
sessors, because even if the provisions of the Revised Stat-
utes (1893), as they appear in art. 6, were enacted as a general
law referring to returns and assessments for taxation for all
purposes, including municipal taxation, yet I think the act
of 1893, amending the charter of the city of Columbia, hav-
ing been passed subsequent to this general law, gave the
city authorities of the city of Columbia the right which
they claimed of making a different and a higher valuation
and assessment, and I hold that the valuation and assess-
ment made by them of the property of petitioner is legal."

It is the judgment of this Court, that the judgment of
the Circuit Court be affirmed.

MR. CHIEF JUSTICE MCIVER.    For the reasons indicated
in my separate opinion in the case of *Ross* v. *Kelly*, 45 S. C.,
at page 463, and repeated in an opinion (not yet filed) in the
very recent case of *Germania Savings Bank* v. *Town of
Darlington*, I cannot concur in the conclusion reached by
Mr. Justice Pope in this case.    On the contrary, I am en-
tirely satisfied that under the provisions of the Constitution
of 1868, by which this case must be tested, there can be
but one lawful assessment of property for taxation, whether
for State, county or municipal purposes, and that assessment
must, necessarily, conform to the assessment made by the
proper officers for State and county taxation.